## PEOPLE v SPANGLER

Docket No. 288632. Submitted May 5, 2009, at Lansing. Decided July 21,
   2009, at 9:00 a.m.

   Darrin W. Spangler, charged in the Ingham Circuit Court with
   first-degree criminal sexual conduct, second-degree criminal
   sexual conduct, and gross indecency between males, moved in
   limine for the exclusion of statements the four-year-old complain-
   ant had made to a sexual assault nurse examiner (SANE) at a
   hospital. The court, James R. Giddings, J., granted the motion.
   The prosecution appealed by leave granted.

   The Court of Appeals *held*:

   1. The Confrontation Clause of the Sixth Amendment bars
   out-of-court statements that are testimonial in nature unless the
   declarant is unavailable to testify but the defendant had a prior
   opportunity to cross-examine the declarant.

   2. Statements are nontestimonial when made in the course of
   police interrogation under circumstances objectively indicating
   that the primary purpose of the interrogation is to enable police
   assistance to meet an ongoing emergency. They are testimonial
   when the circumstances objectively indicate that there is no such
   ongoing emergency and that the primary purpose of the interro-
   gation is to establish or prove past events potentially relevant to a
   later criminal prosecution.

   3. In order to determine whether a sexual abuse victim's
   statements to a SANE are testimonial, the reviewing court must
   consider the totality of the circumstances of the victim's state-
   ments and determine whether the circumstances would lead an
   objective person to reasonably believe that the statements will be
   used in a later prosecution or objectively indicate that the primary
   purpose of the SANE's questioning was to establish past events
   potentially relevant to a later prosecution rather that to meet an
   ongoing emergency. In making its decision, the court may, among
   other things, consider (1) the reason for the victim's presentation
   to the SANE, e.g., to be checked for injuries or for signs of abuse;
   (2) the length of time between the abuse and the presentation; (3)
   what, if any, preliminary questions were asked of the victim or the
   victim's representative, or what preliminary conversations took

place, before the official interview or examination; (4) where the interview or examination took place, e.g., a hospital emergency room, another location in the hospital, or an off-site location; (5) the manner in which the interview or examination was conducted; (6) whether the SANE conducted a medical examination and, if so, the extent of the examination and whether the SANE provided or recommended any medical treatment; (7) whether the SANE took photographs or collected any other evidence; (8) whether the victim's statements were offered spontaneously, or in response to particular questions, and at what point during the interview or examination the statements were made; (9) whether the SANE completed a forensic form during or after the interview or examination; (10) whether the victim or the victim's representative signed release or authorization forms, or was privy to any portion of the forensic form, before or during the interview or examination; (11) whether individuals other than the victim and the SANE were involved in the interview and, if so, the level of their involvement; (12) if and when law enforcement became involved in the case, how they became involved and the level of their involvement; and (13) how SANEs are used by the particular hospital or facility where the interview or examination took place.

4. The record in this case thus far is inadequate for a proper decision by the trial court on the question whether any or all the complainant's statements to the SANE during the medical forensic examination were testimonial and barred by the Confrontation Clause. The case must be remanded for a fuller development of the record and for a reconsideration of the motion in limine.

Order vacated and case remanded for further proceedings.

CONSTITUTIONAL LAW — RIGHT OF CONFRONTATION — EVIDENCE — HEARSAY — SEXUAL ABUSE VICTIMS — SEXUAL ASSAULT NURSE EXAMINERS.

Statements by a sexual abuse victim to a sexual assault nurse examiner are testimonial and barred by the Confrontation Clause if the totality of the circumstances objectively indicate that the statements will be used in a later criminal prosecution or that the primary purpose of the sexual assault nurse examiner's questioning was to establish past events potentially relevant to a later criminal prosecution rather than to meet an ongoing emergency (US Const, Am VI).

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, *Stuart J. Dunnings, III*, Prosecuting Attorney, and *Jonathan C. Roth*, Assistant Prosecuting Attorney, for the people.

*Thomas Rasmusson* for the defendant.

Before: K. F. KELLY, P.J., and CAVANAGH and BECKERING, JJ.

PER CURIAM. The prosecution appeals by leave granted the trial court's October 28, 2008, order granting defendant's motion in limine to exclude statements the complainant made to a sexual assault nurse examiner (SANE) during a medical forensic examination. At issue is whether the complainant's statements were testimonial hearsay and thus barred by the Confrontation Clause of the Sixth Amendment, US Const, Am VI. We vacate the trial court's order and remand for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

Defendant has been charged with first-degree criminal sexual conduct (CSC), MCL 750.520b(1)(a) (anal-penile penetration of a person under 13 years of age), second-degree CSC, MCL 750.520c(2)(b) (sexual contact with a person under 13 years of age and the defendant is 17 years of age or older), and gross indecency between males, MCL 750.338. The complainant, a young boy, was four years of age at the time of the alleged abuse.

The record in this case consists of (1) arguments of counsel in a 14-minute motion in limine hearing; (2) a Michigan State Police original incident report (incident report); and (3) a "Michigan Medical Forensic Examination Record" (forensic form). According to the incident report, the complainant's mother said that the complainant started to "hump her and make grunting noises while doing so." After receiving further information from the complainant, she contacted the family's physician. The record is silent about what

information was relayed to the doctor. The doctor recommended that she take the complainant to Sparrow Hospital to be "checked for injuries." The complainant was immediately taken to the hospital.

At Sparrow Hospital, the complainant's mother signed a permission form authorizing a SANE to perform a medical forensic examination and take medical forensic photographs. Jane Schneider, a SANE, conducted a medical forensic examination of the complainant and completed the forensic form. There is no information in the record reflecting what occurred during the intake process at the hospital, who the mother and the complainant spoke with, or how a SANE came to be assigned to the case. In fact, there is no evidence on the record of the particular process the hospital employed regarding the examination of the complainant. The record is also silent on how the hospital uses the services of SANEs, what their training or certification consists of, or their relationship with local law enforcement. It is clear, however, that at some point in time while the complainant was at the hospital, Schneider filled out the forensic form. On the form, Schneider recorded statements the victim made:

> "Bear hurt it. He put his pee pee in my butt. It hurt. He turned the movie off and took my pop away. I touched his pee pee with my hand. He had me squish it. Water came out, yellow water. He said his pee pee is too dangerous. Let's call Bear. I want to tell him no. They babysit us."

There is no information regarding when this form was filled out or when, how, or in what context the complainant made the statements. Leisa Fuller, from Child Family Services (Angel House), was present during the examination, but it is unknown how or why she was present or what, if any, role she played in the examination.

The police were contacted and arrived at the hospital before the complainant and his mother left. It was at this point that the mother indicated that she wanted to press charges against defendant. Ultimately, defendant was arrested and gave an oral and a written confession.

Before trial, defendant moved to preclude statements the complainant made to Schneider, simply relying on the forensic form itself and arguing:

> [*Defense Counsel*]: This report itself establishes my argument that it is the functional equivalent of testimony. It is for the purpose of ginning up a case. Notice that the heading—you'll notice that the heading for [the forensic form], it says Forensic Nurse Examiner Program and then here is the release that follows and the release is to perform a medical forensic examination. Next line, to take the medical forensic photographs and that release is signed by the mother and by Ms. Schneider. Then we look at the next page—
>
> [*The Court*]: So it's not for any treatment purpose?
>
> [*Defense Counsel*]: —it says it's a forensic report is what it says .... So we think this was purely the functional equivalent of testimony and it should be excluded under Crawford.

The prosecution argued that because the statements were made to a nurse for the purpose of obtaining medical treatment, they were nontestimonial. The trial court made no attempt to gain any information regarding the process of the examination, what prompted the complainant's statements, or how the forensic form was filled out. Rather, it simply granted the motion to preclude any testimony from the nurse solely on the basis of the format of the forensic form:

> I'm going to grant the motion in limine to foreclose this testimony. This very statement right here is from Davis and Washington. I don't believe that this statement prepared in this case in any way falls—well this is indeed

testimonial as described by the United States Supreme Court Justice Scalia's opinion. It says right here, I mean right in the beginning we've X'd it out, consent not to collect medical [forensic specimens].

Michigan Medical Forensic Examination Record history of assault, multiple assailants, there are boxes, weapons used, location of assault, physical assessment, forensics specimen collection, treatment provided and so on and so forth.

\* \* \*

—I'm looking—I'm kind of flipping through the whole thing. This doesn't have—this has nothing whatsoever to do with any treatment. It has nothing whatsoever to do with any emergency. Curiously enough, the Court of Appeals cited a statement [in *People v Lewis*, unpublished opinion per curiam of the Court of Appeals, issued March 13, 2008 (Docket No. 274005)], but then made a ruling which does not seem to be consistent with the statement out of Davis and Washington, a more recent quoting. Statements are non testimonial when made in the course of a police interrogation under circumstances objectively indicating the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.

Testimony when the circumstances objectively indicate that there is no such ongoing emergency and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to . . . the prosecution. I mean I'm not aware—I mean that's the whole purpose of this examination and I don't know that the outcome can possibly depend on how reliable in terms of age, mental status or anything else (undecipherable). I mean that is not the focus of Davis and Washington, although the panel seems to have gleaned something in that regard.

Here this is a classic, if there is such a thing as a classic example of testimonial—of a statement that is testimonial or a series of statements of testimonial nature, that's this one here. So I'm going to grant the motion.

This Court granted the prosecution's application for leave to appeal.[1]

## II. APPLICABLE LAW

The prosecution argues that the trial court erred by excluding the complainant's statements to Schneider during the medical forensic examination. According to the prosecution, the statements were nontestimonial and not subject to the Confrontation Clause. Generally, we review a trial court's decision to admit or exclude evidence for abuse of discretion. *People v Katt*, 468 Mich 272, 278; 662 NW2d 12 (2003). But we review preliminary issues of law, such as admissibility of evidence based on construction of a constitutional provision, de novo. *Id.*

### A

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." US Const, Am VI. In *Crawford v Washington*, 541 US 36, 53-54; 124 S Ct 1354; 158 L Ed 2d 177 (2004), the United States Supreme Court held that the Confrontation Clause bars out-of-court statements that are testimonial in nature unless the declarant is unavailable to testify but the defendant had a prior opportunity to cross-examine the declarant. In that case, an eyewitness to a stabbing described the stabbing to the police during a custodial interrogation later the same night. *Id.* at 38. The Court determined that the eyewitness's statements during the interrogation were testimonial, *id.* at 61, 68, describing testimonial statements as follows:

---

[1] *People v Spangler*, unpublished order of the Court of Appeals, entered December 29, 2008 (Docket No. 288632).

Various formulations of this core class of "testimonial" statements exist: "ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially," . . . "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," . . . "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial" . . . . These formulations all share a common nucleus and then define the Clause's coverage at various levels of abstraction around it. Regardless of the precise articulation, some statements qualify under any definition—for example, *ex parte* testimony at a preliminary hearing.

Statements taken by police officers in the course of interrogations are also testimonial under even a narrow standard. [*Id*. at 51-52 (citations omitted).]

In *Davis v Washington*, 547 US 813, 822; 126 S Ct 2266; 165 L Ed 2d 224 (2006) the Court further defined the distinction between nontestimonial and testimonial statements:

Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

In that case, the Court held that a recording of the initial portion of a conversation between a domestic abuse victim and a 911 operator was nontestimonial. *Id*. at 829. The Court noted that although 911 operators

are not law enforcement officers, they may at least be agents of law enforcement when conducting interrogations of 911 callers. *Id*. at 823 n 2. Thus, for purposes of that opinion, the Court considered the acts of the 911 operator to be the acts of the police. *Id*. The Court further noted, however, that "the initial interrogation conducted in connection with a 911 call, is ordinarily not designed primarily to 'establis[h] or prov[e]' some past fact, but to describe current circumstances requiring police assistance." *Id*. at 827. It found that unlike the eyewitness in *Crawford*, the victim in *Davis* was "speaking about events *as they were actually happening*"; she was "facing an ongoing emergency"; her 911 call was "plainly a call for help against a bona fide physical threat"; her "elicited statements were necessary to be able to resolve the present emergency, rather than simply to learn . . . what had happened in the past"; and her "frantic answers were provided over the phone, in an environment that was not tranquil, or even (as far as any reasonable 911 operator could make out) safe." *Id*. (emphasis in original). The Court concluded that the circumstances of the interrogation "objectively indicate its primary purpose was to enable police assistance to meet an ongoing emergency. [The victim] simply was not acting as a *witness*; she was not testifying. What she said was not 'a weaker substitute for live testimony' at trial." *Id*. at 828 (emphasis in original).

In regard to the later portion of the conversation between the victim and the 911 operator, the Court held:

> This is not to say that a conversation which begins as an interrogation to determine the need for emergency assistance cannot, as the Indiana Supreme Court put it, "evolve into testimonial statements," once that purpose has been achieved. In this case, for example, after the operator

gained the information needed to address the exigency of the moment, the emergency appears to have ended (when Davis drove away from the premises). The operator then told [the victim] to be quiet, and proceeded to pose a battery of questions. It could readily be maintained that, from that point on, [the victim's] statements were testimonial, not unlike the "structured police questioning" that occurred in *Crawford*. . . . [T]rial courts will recognize the point at which, for Sixth Amendment purposes, statements in response to interrogations become testimonial. Through *in limine* procedure, they should redact or exclude the portions of any statement that have become testimonial . . . . [*Id.* at 828-829 (citations omitted).]

B

Courts of this state have not yet determined whether a sexual abuse victim's statements to a SANE may be subject to the Confrontation Clause. In *People v Geno*, 261 Mich App 624, 625; 683 NW2d 687 (2004), the parent of a two-year-old sexual abuse victim telephoned Child Protective Services, which then arranged for an assessment and interview of the child at the Children's Assessment Center. During the interview, the child indicated that the defendant had hurt her vaginal area. *Id.* This Court, in an opinion that followed *Crawford* but predated *Davis*, concluded:

[T]he child's statement did not constitute testimonial evidence under *Crawford*, and therefore was not barred by the Confrontation Clause. The child's statement was made to the executive director of the Children's Assessment Center, not to a government employee, and the child's answer to the question whether she had an "owie" was not a statement in the nature of " '*ex parte* in-court testimony or its functional equivalent . . . .' " *Crawford, supra* [at 51]. [*Geno, supra* at 631.]

Although the Court noted that the executive director of the Children's Assessment Center was not a govern-

ment employee, it did not determine whether the director acted as an agent of law enforcement during the assessment and interview of the child. Furthermore, although the Court determined that the child's statement was not in the nature of "*ex parte* in-court testimony or its functional equivalent," it did not specifically determine whether the statement fell under any of the other formulations of testimonial statements listed in *Crawford*, such as "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford, supra* at 52 (quotation marks and citation omitted).

In *People v Walker (On Remand)*, 273 Mich App 56, 59-60; 728 NW2d 902 (2006), the victim of an alleged felonious assault escaped from her own house and went to the house of a neighbor, who telephoned 911. This Court, in an opinion issued after *Davis*, held that the neighbor's 911 call was a call for help and that the information elicited was "necessary to resolve the present emergency [the victim's son was still in the home], rather than learn what had happened in the past . . . ." *Id*. at 63. These statements were therefore nontestimonial. *Id*. at 59. After the police arrived at the scene, however, the victim made additional statements, at least some of which were recorded by the neighbor. *Id*. at 60, 64-65. The Court held that the victim's oral statements to the police and those recorded by the neighbor were "generally testimonial" under *Davis*. *Id*. at 65. It found that although "portions of these statements could be viewed as necessary for the police to assess the present emergency," the primary purpose of the police questioning was investigatory, there was no indication of a continuing danger, and the statements "recounted how [the] potentially criminal past events began and progressed." *Id*. at 65. The Court

did not specifically determine whether the neighbor acted as an agent of law enforcement, focusing instead on the purpose of the police officers' questions, the status of the emergency, and the nature of the victim's statements.

More recently, in *People v Bryant*, 483 Mich 132; 768 NW2d 65 (2009), our Supreme Court held that a shooting victim's statements to the police "constituted inadmissible testimonial hearsay within the meaning of the United States Supreme Court's decisions in *Crawford* [*supra*] and *Davis* [*supra*]" because the " 'primary purpose of the interrogation [was] to establish or prove past events potentially relevant to later criminal prosecution.' " *Bryant, supra* at 134-135, quoting *Davis, supra* at 822. In *Bryant*, five police officers found the victim lying on the ground at a gas station. *Id.* at 135-136. "The victim had a gunshot wound in his abdomen and appeared to be in considerable pain." *Id.* at 136. The officers asked the victim "what had happened, who had shot him, and where the shooting had occurred." *Id.* at 143. The victim stated that the defendant had shot him approximately 30 minutes earlier at the defendant's house, "which was about six blocks away, and that he drove himself to the gas station." *Id.* At the time of his statements, the victim was aware "that emergency medical service (EMS) was on the way." *Id.* at 144. After summarizing the United States Supreme Court's decisions in *Crawford* and *Davis,* our Supreme Court held that the victim's statements were testimonial in nature, stating, in part:

> The circumstances [of the victim's statements], in our judgment, clearly indicate that the "primary purpose" of the questioning was to establish the facts of an event that had *already* occurred; the "primary purpose" was not to enable police assistance to meet an ongoing emergency. The crime had been completed about 30 minutes earlier and six

blocks from where the police questioned the victim. The police asked the victim what had happened in the past, not what was currently happening. That is, the "primary purpose" of the questions asked, and the answers given, was to enable the police to identify, locate, and apprehend the perpetrator.

*Davis* stated that "in the final analysis [it is] the declarant's statements, not the interrogation's questions, that the Confrontation Clause requires us to evaluate. The declarant here (i.e., the victim) made these statements while he was surrounded by five police officers and knowing that emergency medical services (EMS) was on the way. Obviously, his primary purpose in making these statements to the police was not to enable the police to meet an ongoing emergency of the type identified by the United States Supreme Court, but was instead to tell people who had committed the crime against him, where the crime had been committed, and where the police could find the criminal. That is, the primary purpose of the victim's statements to the police was to "establish or prove past events potentially relevant to later criminal prosecution."

Further, the officers' actions do not suggest that the officers themselves considered the circumstances at the gas station to constitute an "ongoing emergency," at least not as the Supreme Court defines that term . . . .

The primary purpose of the police questioning of the victim at the gas station was to determine who shot the victim and where the shooter could be found so that they could arrest him. [*Id.* at 143-146 (citations omitted).]

C

A majority of state courts that have considered this issue have determined that statements by a sexual abuse victim to a SANE, or similar examiner, were testimonial in nature and barred by the Confrontation Clause. In *State v Ortega*, 143 NM 261, 262; 175 P3d 929 (2007), the court held that a child victim's statements during a

SANE examination were testimonial. The court noted that "*Crawford* jurisprudence" focuses on the " 'purpose' of the interview or interrogation in which a statement is taken." *Id*. at 265. Addressing the purpose of a SANE examination, the court stated:

> Dr. Gagan [the medical director of the SANE program] characterized the SANE examination as a "forensic evaluation that has medical examination features to it, and if it's appropriate, to determine which forensic evidence needs to be recorded or collected." Ballentine's Law Dictionary defines "forensic" as "pertaining to or belonging to the courts." Ballentine's Law Dictionary 488 (3d ed. 1969). Specifically, Dr. Gagan described a forensic medical examination as different from a medical examination in both the type of information sought and the method used in seeking it. Its primary purpose is to evaluate and record possible injuries, record any injuries found, work with law enforcement and child services agencies, and determine if the child is in a safe environment. We think the district court fairly characterized the SANE exam as a "forensic exam with medical features." The United States Department of Justices's description of SANE program operations states that
>
> "[t]he SANE or other medical personnel (e.g., emergency department physicians or nurses) first assess the victim's need for emergency medical care and ensure that serious injuries are treated. After the victim's medical condition is stabilized or it is determined that immediate medical care is not required, the SANE can begin the evidentiary examination."
>
> Sexual Assault Nurse Examiner (SANE) Programs, http://www.ncjrs.gov/App/Publications/alphaList.aspx?alpha=S. While SANE personnel might treat medical conditions requiring immediate attention for a victim's safety, "further evaluation and care of serious trauma is referred to a designated medical facility or physician." *Id*. Any medications provided the victim by SANE personnel are "prophylactic . . . for the prevention of sexually transmitted diseases . . . and other care needed as a result of the crime." *Id*. Clearly, the SANE examination is one geared for the

preparation, collection, evaluation and disposition of evidence, and all medical treatment provided is relative to the patient being a victim of a sexual crime. We believe that this purpose exists in concert with the very things that might make a statement obtained thereby "testimonial" . . . .

While we have recognized that statements identifying a perpetrator may be important to subsequent psychological treatment and may be evidence on which a medical professional might rely in providing such treatment, . . . that is not our current situation, as a SANE is not in the business of providing ongoing treatment. We also recognize that the statements may have had a medical purpose, but that does not preclude statements from also being testimonial. . . .

\* \* \*

The statements given by Child and recorded by Nurse Lopez [the nurse who conducted the examination] described nothing but Defendants assaulting her by rubbing parts of her body, and demanding that she rub parts of theirs. She described times and places where and when this happened, and stated that Defendants had told her not to tell her mother because they did not want to get in "big trouble." She stated that her mother found out because of "black hair on [her] underwear." Under a report form heading of "Other Pertinent History," nothing appears. No other parts of the report are germane to medical diagnosis or treatment. No "evidence of findings or trauma" to Child's body were noted and no medications were prescribed. The report notes anal contact with Child with a finger and Child's anus was examined by Nurse Lopez for evidence of abuse, but the report discloses no other penetration or contact. Nurse Lopez's narrative impression was that Child had provided a "clear history of sexual abuse" and described it. Nurse Lopez noted physical findings relative to the described sexual contact, but made no other medical findings, diagnoses, prognoses, or recommendations. The discharge recommendation was merely "[f]ollow up with support services as needed." The report was then forwarded to Officer Lewandowski.

> While a SANE evaluation does not emphasize obtaining a detailed victim statement concerning the events and circumstances of abuse . . . , the purpose of the SANE examination is geared toward obtaining the victim's verbal account of abuse to then begin looking for physical manifestations that confirm or confound the account, thereby obtaining forensic evidence to be used in court. In this case, this is all that occurred. Obtaining statements that might be relevant to medical treatment is a significant step short of obtaining statements for the purpose of *engaging* in medical treatment. [*Ortega, supra* at 265-267.]

The court concluded that because the primary purpose of the SANE examination was "to prove some past fact for use in a criminal trial rather than to meet an ongoing emergency," the child victim's statements during the examination were testimonial. *Id.* at 269.

Similarly, in *Medina v State*, 122 Nev 346, 349, 352-353; 143 P3d 471 (2006), the court held that a rape victim's statements to a SANE during a sexual assault examination were testimonial. The court concluded that the SANE was "a police operative" in that she was a "forensics nurse" who, according to her own testimony, gathered "evidence for the prosecution for possible use in later prosecutions," and that the circumstances of the examination "would lead an objective witness to reasonably believe that the statements would be available for use at a later trial." *Id.* at 354-355. *United States v Gardinier*, 65 MJ 60 (CA Armed Forces, 2007) involved statements by a child who was a victim of sexual abuse to a SANE during a sexual assault examination at the Children's Advocacy Center. *Id.* at 65-66. The SANE completed a form entitled "Forensic Medical Examination Form," which contained a "Treatments" section where the SANE recommended follow-up care at the hospital. *Id.* at 66. The examination was conducted at the behest of law enforcement,

and the consent form for the examination stated that the form would be provided to law enforcement. *Id.* The court determined, under the totality of the circumstances, that the child's "statements were elicited in response to law enforcement inquiry with the primary purpose of producing evidence with an eye toward trial." *Id.* Likewise, in *State v Cannon*, 254 SW3d 287, 305 (Tenn, 2008), the court held that the sexual assault victim's statements during a SANE examination "were testimonial as the primary purpose of these statements was to establish or prove past events potentially relevant to later criminal prosecution." (Quotation marks and citation omitted.) It was the policy of both the hospital and the police to subject sexual assault victims to SANE examinations. *Id.* In *Cannon*, a detective questioned the victim along with the SANE and there was no ongoing emergency. *Id.* The SANE described her interaction with the victim as an "investigation" and "forensics examination"; she had been trained to question victims of sexual assault, which included instruction from the police and the prosecutor on collection of evidence and questions to ask; and she often testified regarding her findings. *Id.*

Several state courts have determined that statements by sexual abuse victims to examiners similar to SANEs were testimonial. See, e.g., *In re Rolandis G*, 232 Ill 2d 13, 32; 902 NE2d 600 (2008) (a victim's statements to a child advocate who was part of an "interdisciplinary, coordinated systems approach to the investigation of child sexual abuse" were testimonial where a police officer observed the interview, a videotape of the interview was turned over to the police, and the objective circumstances of the interview indicated that its primary purpose was "to gather information and establish past acts for future prosecution"); *State v Hooper*, 145 Idaho 139, 145; 176 P3d 911 (2007) (a

victim's statements to a forensic interviewer at the
Sexual Trauma Abuse Response Center were testimo-
nial where the victim was advised that the police were
watching the interview, the police determined some of
the questions asked, the questions covered details not
pertinent to medical concerns, a videotape of the inter-
view and other evidence were turned over to the police,
and "the interview was geared toward gathering evi-
dence rather than providing medical treatment");
*People v Stechly*, 225 Ill 2d 246, 300; 870 NE2d 333
(2007) (a victim's statements to a clinical specialist with
the hospital's child abuse team were testimonial where
the victim's mother brought him to the hospital emer-
gency room, the specialist twice interviewed the victim,
the primary purpose of both interviews was to gather
information for an investigation and possible prosecu-
tion, and the specialist was a "mandated reporter"
legally required to report child sexual abuse); *Hernan-
dez v State*, 946 So 2d 1270, 1271 (Fla App, 2007) (a
victim's statements to a "Child Protection Team" nurse
were testimonial where the forensic examination was
conducted at law enforcement's behest, a statute re-
quired the nurse to perform medical and forensic ex-
aminations and serve as a witness at trial, a primary
purpose of the examination was to gather information
for potential criminal prosecution, and there was no
ongoing emergency). But see *Seely v State*, 373 Ark 141;
282 SW3d 778 (2008) (a victim's statements to a social
worker whose duties included interviewing children
brought to the hospital for physical or sexual abuse
were not testimonial where the parent brought the
child to the hospital, the police did not request or
participate in the interview, and the social worker's
primary purpose was to assess the victim's safety and
need for medical treatment).

D

We hold, in accordance with the United States Supreme Court's description of testimonial statements in *Crawford* and *Davis*, the reasoning of the courts of this state in *Walker* and *Bryant*, and the decisions of numerous state courts analyzing this issue, that in order to determine whether a sexual abuse victim's statements to a SANE are testimonial, the reviewing court must consider the totality of the circumstances of the victim's statements and decide whether the circumstances objectively indicated that the statements would be available for use in a later prosecution or that the primary purpose of the SANE's questioning was to establish past events potentially relevant to a later prosecution rather than to meet an ongoing emergency.

Under *Crawford*, testimonial statements include "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford, supra* at 52 (quotation marks and citation omitted). The *Davis* Court similarly held that statements "are testimonial when the circumstances objectively indicate that there is no . . . ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis, supra* at 822. The Court further held that "a conversation which begins as an interrogation to determine the need for emergency assistance [may] . . . 'evolve into testimonial statements,' once that purpose has been achieved. . . . [T]rial courts will recognize the point at which, for Sixth Amendment purposes, statements in response to interrogations become testimonial. Through *in limine* procedure, they should redact or exclude the portions of any statement that have become testimonial . . . ." *Id.*

at 828-829; see also *Walker, supra* at 59-60, 65 (holding that although the victim's initial statements were non-testimonial, the victim's later statements to the police and her neighbor were testimonial because the primary purpose of the questioning was investigatory, there was no indication of a continuing danger, and the statements "recounted how [the] potentially criminal past events began and progressed").

As described earlier, courts of other states have considered the totality of the circumstances of a sexual abuse victim's statements to a SANE or similar examiner in determining whether the statements were testimonial. Some of the facts considered were: (1) the reason for the victim's presentation to the SANE, e.g., to be checked for injuries or for signs of abuse; (2) the length of time between the abuse and the presentation; (3) what, if any, preliminary questions were asked of the victim or the victim's representative, or what preliminary conversations took place, before the official interview or examination; (4) where the interview or examination took place, e.g., a hospital emergency room, another location in the hospital, or an off-site location; (5) the manner in which the interview or examination was conducted; (6) whether the SANE conducted a medical examination and, if so, the extent of the examination and whether the SANE provided or recommended any medical treatment; (7) whether the SANE took photographs or collected any other evidence; (8) whether the victim's statements were offered spontaneously, or in response to particular questions, and at what point during the interview or examination the statements were made; (9) whether the SANE completed a forensic form during or after the interview or examination; (10) whether the victim or the victim's representative signed release or authorization forms, or was privy to any portion of the forensic form, before or

during the interview or examination; (11) whether individuals other than the victim and the SANE were involved in the interview or examination and, if so, the level of their involvement; (12) if and when law enforcement became involved in the case, how they became involved, and the level of their involvement; and (13) how SANEs are used by the particular hospital or facility where the interview or examination took place. This list of factual indicia is helpful to trial courts in making an admissibility determination under the Confrontation Clause, although it is by no means an exhaustive list.

### III. INADEQUATE RECORD

In this case, the trial court erred by making its admissibility determination solely on the basis of the forensic form completed by Schneider, and by failing to consider whether the circumstances of the complainant's statements, viewed objectively and in their totality, indicated that the statements were testimonial. Nor is the record sufficiently developed to make a proper determination. See *People v Kreiner*, 415 Mich 372, 379; 329 NW2d 716 (1982) (holding that because the record in the case had not been developed sufficiently to determine whether a child's statement was admissible under the "tender years" exception, a new trial was warranted). The record is limited to the arguments of counsel at the 14-minute hearing on defendant's motion in limine, as well as the forensic form and the incident report, the admissibility of which is questionable. Defendant's motion was not accompanied by, and the trial court did not require, any evidence pertaining to numerous relevant facts, including, but not limited to: what, if any, questions were asked of the complainant and his mother before the medical forensic exami-

nation; what, if any, conversations took place before the examination; when the complainant's mother signed the authorization and release forms, and if any other information was provided to her at that time; how Schneider was assigned to the case; the manner in which the examination was conducted; the particular questions Schneider asked of the complainant during the examination; at what point during the examination the complainant's statements were made; whether any individuals other than Schneider, the complainant, and his mother were present during the examination, and, if so, the level of their involvement; when and by whom was law enforcement contacted; and how SANEs are used at Sparrow Hospital.

On remand, the trial court must develop the record, making factual findings based on properly admitted evidence, before deciding defendant's motion in limine. In determining whether any or all of the complainant's statements to Schneider during the medical forensic examination were testimonial and thus barred by the Confrontation Clause, the trial court must consider the totality of the circumstances of the complainant's statements and determine whether the circumstances would lead an objective witness to reasonably believe that the statements would be available for use in a later prosecution or objectively indicated that the primary purpose of Schneider's questions or the examination was to establish past events potentially relevant to a later prosecution rather than to meet an ongoing emergency.

Order vacated and case remanded for further proceedings. We do not retain jurisdiction.