# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MAJIED SHARRIEFF ALFORD,

Defendant-Appellant.

UNPUBLISHED
April 28, 2015

No. 319337
Oakland Circuit Court
LC No. 2010-232541-FC

Before: BECKERING, P.J., and CAVANAGH and SAAD, JJ.

PER CURIAM.

Defendant, Majied Sharrieff Alford, appeals as of right his jury trial convictions on two counts of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(f) (personal injury). The trial court sentenced defendant as an habitual offender, fourth offense, MCL 769.12, to consecutive sentences of 62.5 to 99 years in prison on each count, giving him credit for 1,219 days served on the first of the two counts. We affirm.

## I. PERTINENT FACTS

The prosecution presented evidence at trial to establish that defendant sexually assaulted the victim, LS, during an arranged visit with his child. In early June 2010, defendant called LS, his former girlfriend and the mother of his two-year-old child, seeking to visit with the child. LS was hesitant at first, but she eventually relented, agreeing that defendant's sister, Gina Young, "would be the mediator." On June 7, 2010, defendant and his friend, Ken Carter, picked up LS, the child, and LS's young cousin, who was similar in age to the child, and eventually took them to Young's home. As the evening progressed, defendant began asking LS about her current romantic relationship and became "erratic," upset, and began "jumping around" and "sweating." Defendant told LS that he was going to be with her, or he was "going to kill" her, their child, and himself. Defendant made similar threats throughout the evening, at one point grabbing a kitchen knife, stating that there was "going to be bloodshed."

In an effort to calm defendant, Young took him for a walk. While defendant was gone, LS made several telephone calls to acquaintances, but she was unable to procure a ride home. LS left a voicemail message for her boyfriend, stating that defendant was "trying to kill her" and that she needed his help. Because the battery of her cellular telephone was dying, she also changed her voicemail message to provide the address to Young's home and state that she was in

-1-

distress. A short time later, defendant returned from his walk. Initially, he was calmer, but later he again began making threats toward LS.

As the evening wore on, defendant directed LS, their child, and LS's cousin into a bedroom. Defendant removed his clothes and ordered LS to do the same. She did not want to comply, so she left on her shirt. Defendant again questioned LS about her current romantic relationship, then became upset and forced her to perform fellatio upon him. When LS pulled away from him and stopped, defendant punched her on the top of the head, which resulted in her having a "couple lumps" near her hairline. In addition to the lumps on her head, she received a "big scratch on [her] arm" that was caused by tussling with defendant. After defendant punched LS, he began to choke her. He then forced himself upon her and penetrated her vaginally, which was not consensual.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant first contends that there was insufficient evidence to support his convictions. We review this claim de novo. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). "To determine whether the prosecutor has presented sufficient evidence to sustain a conviction, [appellate courts] review the evidence in the light most favorable to the prosecutor and determine whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v Smith-Anthony*, 494 Mich 669, 676; 837 NW2d 415 (2013) (citation and quotation marks omitted). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowak*, 462 Mich 392, 400; 614 NW2d 78 (2000).

Defendant was convicted of CSC I pursuant to MCL 750.520b(1)(f), which provides, in pertinent part:

> (1) A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists:
>
> * * *
>
> (f) The actor causes personal injury to the victim and force or coercion is used to accomplish sexual penetration.

"Personal injury" is defined as "bodily injury, disfigurement, mental anguish, chronic pain, pregnancy, disease, or loss or impairment of a sexual or reproductive organ." MCL 750.520a(n). Defendant only challenges whether there was sufficient evidence of "bodily injury" and "mental anguish" to support his convictions. At the outset, we note that the jury was not required to make independent findings on both bodily injury and mental anguish, as they are merely different ways of defining the single element of personal injury. *People v Asevedo*, 217 Mich App 393, 397; 551 NW2d 478 (1996). Nevertheless, we note that there was sufficient evidence for a rational jury to find either of the alternative theories in this case.

Concerning bodily injury, this Court has held that injuries "need not be permanent or substantial" in order to satisfy the statute. *People v Mackle*, 241 Mich App 583, 596; 617 NW2d

339 (2000). Contrary to defendant's assertions, there was sufficient evidence for a rational jury to find that LS suffered bodily injury. She testified that defendant punched her in the head during the assaults, producing "lumps" on her head. She also testified that she received scratches on her face, shoulder, and forearm, and that defendant choked her. This was sufficient to constitute bodily injury under the statute. See *id.* at 598-599 (finding, among others, that repeated "open-hand slaps" supported a finding of physical injury, as did the fact that defendant choked the victim during one of the assaults).

Next, we reject defendant's argument that there was insufficient evidence for a rational jury to find that the victim suffered mental anguish. "To prove mental anguish, 'the prosecution is required to produce evidence from which a rational trier of fact could conclude, beyond a reasonable doubt, that the victim experienced extreme or excruciating pain, distress, or suffering of the mind.' " *Id.* at 596-597, quoting *People v Petrella*, 424 Mich 221, 259; 380 NW2d 11 (1985). In determining whether there was sufficient evidence concerning mental anguish, we are guided by the following non-exhaustive list of factors:

> (1) Testimony that the victim was upset, crying, sobbing, or hysterical during or after the assault.
>
> (2) The need by the victim for psychiatric or psychological care or treatment.
>
> (3) Some interference with the victim's ability to conduct a normal life, such as absence from the workplace.
>
> (4) Fear for the victim's life or safety, or that of those near to her.
>
> (5) Feelings of anger and humiliation by the victim.
>
> (6) Evidence that the victim was prescribed some sort of medication to treat her anxiety, insomnia, or other symptoms.
>
> (7) Evidence that the emotional or psychological effects of the assault were long-lasting.
>
> (8) A lingering fear, anxiety, or apprehension about being in vulnerable situations in which the victim may be subject to another attack.
>
> (9) The fact that the assailant was the victim's natural father. [*Petrella*, 424 Mich at 270-271].

When viewed in a light most favorable to the prosecution, there was sufficient evidence for a rational jury to find mental anguish. The assaults occurred in the context of an evening where defendant made several threats against LS's life if she would not be with him. Defendant overpowered her during the assaults, choking her at one point. LS testified that she was afraid to resist defendant because her daughter and young cousin were present in the room, watching what was going on. She also testified that she was still afraid at the time of trial, which was

approximately three years after the assaults, and that she still experienced "emotional pain." Defendant's argument is meritless. See *id.*; *Mackle*, 241 Mich App at 598.

## III. JURY INSTRUCTIONS

Defendant claims that even assuming there was sufficient evidence of bodily injury or mental anguish, the trial court failed to instruct the jury that it had to unanimously agree as to what the personal injury was that warranted the CSC I convictions. Here, the trial court gave only a general unanimity instruction. Defendant contends that such an instruction was not sufficient to protect his rights in this case. He also contends that defense counsel was ineffective for failing to seek a specific jury instruction about the need for the jury to unanimously agree regarding the personal injury—bodily injury or mental anguish—that established the element of personal injury for his CSC I convictions.

At the outset, we note that defendant waived his challenge to the jury instructions because his trial counsel affirmatively stated that he had "[n]o objections" to the instructions given by the trial court. See *People v Chapo*, 283 Mich App 360, 373; 770 NW2d 68 (2009). We thus turn to defendant's alternative contention that his counsel was ineffective in failing to object to the jury instructions and in waiving any potential objection to the instructions. Defendant did not move for a new trial or *Ginther*[1] hearing, so our review is limited to mistakes apparent on the record. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). To establish his ineffective assistance claim, defendant must show that (1) his trial counsel's performance was deficient under an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

We find no merit to defendant's claim of ineffective assistance in relation to the jury instructions. We rejected a similar issue in *Asevedo*, 217 Mich App at 396-397. There, we explained that "[w]hen a statute lists alternative means of committing an offense which in and of themselves do not constitute separate and distinct offenses, jury unanimity is not required with regard to the alternate theory." *Id.* at 397. Bodily injury, mental anguish, and the other conditions listed in MCL 752.520b(1)(f) are "merely different ways of defining the single element of personal injury" and are not alternate theories upon which jury unanimity is required. *Id.* See also *People v Chelmicki*, 305 Mich App 58, 68-69; 850 NW2d 612 (2014) (explaining, in the context of unlawful imprisonment—which provides for alternative theories relating to a single element of the offense as different means of establishing the element—that the defendant was properly convicted "even if some jurors believed he restrained the victim by means of a weapon, and the rest of the jurors believed he restrained the victim in order to facilitate the commission of the felony of arson (preparation to burn)."). Because no specific unanimity instruction was required, defendant's claim of ineffective assistance of counsel "must fail because defense counsel is not required to make a meritless request or objection." *Id.* at 69.

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

-4-

IV. HEARSAY STATEMENTS

During its case-in-chief, the prosecution presented testimony from Rachelle Radfan Tulashie, a nurse who conducted a sexual assault examination of LS. She testified that the purpose of her examination was to treat LS, and that she did a complete "head to toe physical assessment" of LS. During her examination, she discovered that LS had sustained "some scratches" and had a "couple lumps that were palpable but not visualized," located on the right temple and left back of the head. Radfan Tulashie testified that it was necessary to take LS's history and version of the events in order to treat her. After overruling a hearsay objection from defense counsel,[2] Radfan Tulashie testified that LS told her that "[s]he was forced to perform oral sex" and that the perpetrator engaged her in non-consensual penile/vaginal penetration. LS also told Radfan Tulashie that the perpetrator of the offenses had threatened to kill her.

Defendant argues that the trial court erred by admitting Radfan Tulashie's statements. He contends that the primary purpose of LS's hearsay statement was to establish or prove past events relevant to a subsequent criminal prosecution, thereby making the statements testimonial hearsay. "While a trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion, a preliminary or underlying issue of law regarding the admissibility of the evidence, such as whether a rule of evidence bars admission, is reviewed de novo." *People v McDade*, 301 Mich App 343, 352; 836 NW2d 266 (2013).

A. HEARSAY

The trial court correctly ruled that LS's statements to Radfan Tulashie were admissible under MRE 803(4). Hearsay "is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Unless an exception applies, hearsay is inadmissible. MRE 802. In this case, the prosecution offered LS's statements to Radfan Tulashie pursuant to MRE 803(4), which provides an exception to the hearsay rule for:

> Statements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment.

"Statements made for the purpose of medical treatment are admissible pursuant to MRE 803(4) if they were reasonably necessary for diagnosis and treatment and if the declarant had a self-interested motivation to be truthful in order to receive proper medical care." *People v Mahone*, 294 Mich App 208, 214-215; 816 NW2d 436 (2011).

---

[2] The trial court admitted the testimony pursuant to MRE 803(4) (statements made for purposes of medical treatment or medical diagnosis in connection with treatment).

In *Mahone*, this Court held that statements made to a sexual assault examination nurse under circumstances that were similar to those present in this case were admissible pursuant to MRE 803(4). *Id.* at 215. The panel explained:

> Particularly in cases of sexual assault, in which the injuries might be latent, such as contracting sexually transmitted diseases or psychological in nature, and thus not necessarily physically manifested at all, a victim's complete history and a recitation of the totality of the circumstances of the assault are properly considered to be statements made for medical treatment. Thus, statements the victim made to the nurse were all properly admissible pursuant to MRE 803(4). [*Id.* (internal citations omitted).]

In light of *Mahone*, the trial court did not err when it admitted LS's statements to Radfan Tulashie. Radfan Tulashie testified that LS made the statements during the course of a medical examination. She also testified that the statements were made for the purpose of receiving medical treatment, and that it was necessary for her to take LS's medical history, including the assaults, in order to guide the treatment. The record revealed that LS's statements to Radfan Tulashie guided the subsequent tests that Radfan Tulashie performed. As such, the statements fall within the ambit of MRE 803(4). See *id*. See also *People v Garland*, 286 Mich App 1, 9-10; 777 NW2d 732 (2009) (finding that the victim's statements to a sexual assault examination nurse were admissible pursuant to MRE 803(4)).

### B. CONFRONTATION CLAUSE

Defendant, by referring to LS's statements to Radfan Tulashie as "testimonial hearsay," appears to raise a Confrontation Clause argument. "The Confrontation Clause provides that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . .' " *People v Spangler*, 285 Mich App 136, 142; 774 NW2d 702 (2009), quoting US Const, Am VI (alteration in original). The Confrontation Clause bars out-of-court statements "that are testimonial in nature unless the declarant is unavailable to testify but the defendant had a prior opportunity to cross-examine the declarant." *Id.* As explained by the United States Supreme Court, the prohibition applies to statements "of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Davis v Washington*, 547 US 813, 821; 126 S Ct 2266; 165 L Ed 2d 224 (2006) (citation and quotation marks omitted). Here, the Confrontation Clause is not implicated because the declarant, the victim in this case, testified at trial and was subject to cross-examination by defendant. See *id.* See also *People v Walker (On Remand)*, 273 Mich App 56, 60; 728 NW2d 902 (2006).

Moreover, we do not agree with defendant's characterization of the statements at issue as "testimonial." "To rank as 'testimonial,' a statement must have a primary purpose of establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution." *People v Henry (After Remand)*, 305 Mich App 127, 153; 854 NW2d 114 (2014) (citations and quotation marks omitted; alteration in original). In *Spangler*, 285 Mich App at 155-156, this Court provided the following non-exhaustive list of factors for determining whether a statement made to a sexual assault nurse examiner (SANE), or similar examiner, was testimonial in nature:

(1) the reason for the victim's presentation to the SANE, e.g., to be checked for injuries or for signs of abuse; (2) the length of time between the abuse and the presentation; (3) what, if any, preliminary questions were asked of the victim or the victim's representative, or what preliminary conversations took place, before the official interview or examination; (4) where the interview or examination took place, e.g., a hospital emergency room, another location in the hospital, or an off-site location; (5) the manner in which the interview or examination was conducted; (6) whether the SANE conducted a medical examination and, if so, the extent of the examination and whether the SANE provided or recommended any medical treatment; (7) whether the SANE took photographs or collected any other evidence; (8) whether the victim's statements were offered spontaneously, or in response to particular questions, and at what point during the interview or examination the statements were made; (9) whether the SANE completed a forensic form during or after the interview or examination; (10) whether the victim or the victim's representative signed release or authorization forms, or was privy to any portion of the forensic form, before or during the interview or examination; (11) whether individuals other than the victim and the SANE were involved in the interview or examination and, if so, the level of their involvement; (12) if and when law enforcement became involved in the case, how they became involved, and the level of their involvement; and (13) how SANEs are used by the particular hospital or facility where the interview or examination took place.

A reviewing court must consider "the totality of the circumstances of the victim's statements and decide whether the circumstances objectively indicated that the statements would be available for use in a later prosecution or that the primary purpose of the SANE's questioning was to establish past events potentially relevant to a later prosecution rather than to meet an ongoing emergency." *Id.* at 154.

LS's statements in this case were not testimonial. Radfan Tulashie testified that the LS presented to her in order to be checked for signs of injury and that the purpose of the examination was for medical diagnosis. The examination occurred a relatively short amount of time after the assaults and it occurred at a hospital. Radfan Tulashie testified that she asked open-ended questions that were related to her desire to obtain a medical diagnosis. Although Radfan Tulashie collected evidence, no other individuals were involved in the examination. And, although she contacted the police, she did so after finishing the examination. In light of the totality of these circumstances, the statements were not taken for the primary purpose of establishing or proving past events relevant to a later prosecution. See *id.* See also *Henry (After Remand)*, 305 Mich App at 153; *Garland*, 286 Mich App at 11 ("under the totality of the circumstances of the complainant's statements, an objective witness would reasonably believe that the statements made to the nurse objectively indicated that the primary purpose of the questions or the examination was to meet an ongoing emergency.").

## V. PROSECUTORIAL MISCONDUCT

Next, defendant argues that the prosecutor engaged in misconduct by eliciting testimony that Radfan Tulashie was a mandatory reporter who was required to contact the police whenever she believed that a sexual assault occurred. Defendant contends that this testimony bolstered

LS's credibility and amounted to expert opinion testimony regarding her truthfulness. He also contends that his trial counsel was ineffective for failing to object to the prosecutor's questioning. Because defendant did not raise a timely objection to the alleged improper conduct, we review this issue for outcome-determinative plain error. *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008). We will not find error requiring reversal on this unpreserved claim if a curative instruction would have cured any prejudice caused by the allegedly improper conduct. *Id.* "Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements, and jurors are presumed to follow their instructions[.]" *Id.*(internal citation omitted). In resolving this issue, we must look at the challenged remarks in context. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010).

## A. IMPROPER VOUCHING

The conduct of which defendant complains concerns the prosecutor's questioning of Radfan Tulashie with regard to whether she was a mandatory reporter of suspected sexual assaults. On the third day of trial, defense counsel, as part of his foundational questioning of Radfan Tulashie in regard to the admissibility of LS's medical records and out-of-court statements, asked why her report indicated that she had contacted law enforcement officers. To this inquiry, Radfan Tulashie responded that she was a mandatory reporter. Later that same day, Radfan Tulashie informed the trial court, which had engaged in follow-up questioning, that she contacted police officers "after the exam is done" because she is a mandatory reporter.

On the following day, when the prosecutor resumed direct examination of Radfan Tulashie, she asked the witness to clarify what she meant about being a mandatory reporter, sparking the following colloquy:

> *Q*. Now, you spoke a little bit on Friday in response to some questioning that—you mentioned that you are a mandated reporter, what do you mean by that?
>
> *A*. All nurses—and there's other professions as well, but I'm a nurse so I'll talk about being a nurse, if you believe a crime has occurred it's your duty to contact the police.
>
> *Q*. Okay, and when you talk about mandated reporter, it's your—it's your duty you indicated?
>
> *A*. Yes.
>
> *Q*. Is that something you've been trained about as—during your training as a nurse, as an RN?
>
> *A*. Yes.
>
> *Q*. Okay. In this particular situation did you, in fact, report it?
>
> *A*. Yes, I did.
>
> *Q*. When did that report occur?

*A.* It's my practice that I take care of the patient first and then I contact the police department once my exam has been completed.

*Q.* And did you do that in this situation?

*A.* Yes.

A prosecutor is not to vouch for the credibility of her witnesses by implying that she has special knowledge of a witness' truthfulness. *People v Meissner*, 294 Mich App 438, 456; 812 NW2d 37 (2011). Here, however, when read in context, we do not agree that the prosecutor asked about Radfan Tulashie's duty as a mandatory reporter as a means of impermissibly bolstering or vouching for the credibility of the victim. Rather, the prosecutor simply clarified a term that had been used earlier, but not explained. The prosecutor did so within the context of laying the foundation for the admissibility of Radfan Tulashie's report, which was admitted into evidence. The prosecutor's questions explained the presence of a police officer's name on the report, and why Radfan Tulashie contacted the police in this case. We disagree with defendant's assertion that this was done for purposes of vouching for the victim's credibility. Moreover, the prejudice, if any, caused by the prosecutor's questioning could have been cured by a timely request for a curative instruction. See *Unger*, 278 Mich App at 235. To this end, we note that defense counsel, when cross-examining Radfan Tulashie, asked whether being a mandatory reporter meant she had to report the alleged assault, and "[i]t is not a question of whether or not you believe that report, correct?" To this question, Radfan Tulashie responded "[c]orrect." Thus, the jury was subsequently informed that Radfan Tulashie reported the allegations because she was required to do so, regardless of whether she believed them. This further undercuts defendant's assertion that Radfan Tulashie's credibility was impermissibly bolstered, or that the error, if any, was outcome determinative. He is not entitled to relief. See *id.*

### B. IMPROPER OPINION TESTIMONY

Defendant contends that the prosecutor committed misconduct by eliciting improper opinion testimony from Radfan Tulashie. He contends that she testified as to her opinion that a sexual assault occurred, thereby prompting her to contact the police. He also contends that her opinion testimony was that of an expert, and that she was improperly permitted to testify as an expert without being qualified as such.

It is improper for a prosecutor to ask a witness to opine on the credibility of another witness. *People v Buckey*, 424 Mich 1, 17; 378 NW2d 432 (1985). However, defendant's argument is meritless. The prosecutor did not elicit opinion testimony from Radfan Tulashie. Rather, as noted above, she simply asked for clarification of the term "mandatory reporter." Radfan Tulashie never testified that, in her opinion, a sexual assault had occurred, nor do we discern, from a review of the context of the prosecutor's questions, that the prosecutor sought to elicit testimony from Radfan Tulashie that LS was telling the truth. See *Bennett*, 290 Mich App at 475 (explaining the prosecutor's remarks are to be reviewed in context). There is no merit to defendant's assertion that this amounted to opinion testimony, much less expert opinion testimony.

## C. INEFFECTIVE ASSISTANCE

For the reasons outlined above, defendant's attendant ineffective assistance of counsel claim must fail. Because the prosecutor's questions and conduct were not improper, any objection by defense counsel would have been meritless. Counsel is not required to raise a meritless objection. *Chelmicki*, 305 Mich App at 69. Moreover, we will not second-guess defense counsel's strategic decision to question Radfan Tulashie in such a manner so as to clarify that mandatory reporters must report allegations, regardless of whether they believe them, rather than objecting to testimony that was not worthy of an objection.

## VI. REQUEST FOR AN INVESTIGATOR

Defendant argues that the trial court improperly denied his request for the appointment of an investigator. We review the trial court's decision whether to appoint an investigator for an abuse of discretion. *People v Johnson*, 245 Mich App 243, 260; 631 NW2d 1 (2001) (opinion by O'CONNELL, J). "An abuse of discretion occurs when the trial court renders a decision falling outside the range of principled decisions." *People v Rao*, 491 Mich 271, 279; 815 NW2d 105 (2012). To be entitled to an investigator, a defendant may not rely on "pure conjecture." *Johnson*, 245 Mich App at 260. Instead, he must show that "under the facts and circumstances of the case, an investigator was necessary to afford him due process or that the trial court's ruling substantially prejudiced him." *Id.* See also *People v Blackburn*, 135 Mich App 509, 520-521; 354 NW2d 807 (1984) (holding that the trial court did not abuse its discretion in denying the appointment of an investigator absent a sufficient showing of need for the investigator's services).

Defendant cannot establish an abuse of discretion. He relies on nothing more than pure conjecture and sweeping assertions that "[i]n order for [his] counsel to be properly prepared to conduct his trial and present his defense [counsel] needed the assistance of a qualified investigator." Indeed, he does not even make an attempt to argue what witnesses or evidence an investigator could have uncovered in this case, claiming that it is "impossible, after the fact" to determine what could have been found. The trial court's denial of defendant's speculative request was not an abuse of discretion. *Johnson*, 245 Mich App at 260; *Blackburn*, 135 Mich App at 520-521.

## VII. HABITUAL OFFENDER NOTICE

Lastly, defendant argues that the trial court erred by sentencing him as a fourth habitual offender. Defendant takes issue with the notice of intent to seek an enhanced sentence filed by the prosecutor. As explained more fully *infra*, defendant essentially argues that the prosecutor filed the notice of intent too early. Resolution of this issue requires interpretation of MCL 769.13 and MCR 6.112(F). We review de novo the interpretation of statutes and court rules. *People v King*, 297 Mich App 465, 481–482; 824 NW2d 258 (2012). "The overriding goal guiding judicial interpretation of statutes is to discover and give effect to legislative intent. The starting place for the search for intent is the language used in the statute." *People v Morales*, 240 Mich App 571, 575; 618 NW2d 10 (2000) (citation and quotation marks omitted). "Importantly, [s]tatutory language should be construed reasonably, keeping in mind the purpose of the act, and to avoid absurd results." *People v Hutcheson*, __ Mich App __; __ NW2d __ (Docket No.

313177, issued November 13, 2014), slip op at 2 (citations and quotation marks omitted; alteration in original).

MCL 769.13 requires the prosecution to file notice of its intent to seek an enhanced sentence under the habitual offender statutes. In pertinent part, the statute provides:

(1) In a criminal action, the prosecuting attorney may seek to enhance the sentence of the defendant as provided under section 10, 11, or 12 of this chapter, by filing a written notice of his or her intent to do so within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense.

(2) A notice of intent to seek an enhanced sentence filed under subsection (1) shall list the prior conviction or convictions that will or may be relied upon for purposes of sentence enhancement. The notice shall be filed with the court and served upon the defendant or his or her attorney within the time provided in subsection (1). The notice may be personally served upon the defendant or his or her attorney at the arraignment on the information charging the underlying offense, or may be served in the manner provided by law or court rule for service of written pleadings. The prosecuting attorney shall file a written proof of service with the clerk of the court. [MCL 769.13(1)-(2).]

Similar to MCL 769.13(1), MCR 6.112(F) provides:

A notice of intent to seek an enhanced sentence pursuant to MCL 769.13 must list the prior convictions that may be relied upon for purposes of sentence enhancement. The notice must be filed within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived or eliminated as allowed under MCR 6.113(E), within 21 days after the filing of the information charging the underlying offense.

At issue is the 21-day time period referenced in § 13(1). In *People v Marshall*, 298 Mich App 607, 627; 830 NW2d 414 (2012), vacated in part on other grounds 493 Mich 1020 (2013), this Court explained that the 21-day period is triggered upon the happening of one of two events: (1) arraignment on the underlying offense; or (2) if arraignment is waived, the filing of the information charging the underlying offense. We have explained that § 13 erects a "bright-line test for determining whether a prosecutor has filed a supplemental information promptly." *Morales*, 240 Mich App at 575 (citation and quotation marks omitted). The purpose of § 13 is to provide notice to the defendant of the charges against him as well as the consequences of conviction. *Id.* at 584.

The prosecution filed its notice of intent to seek an enhanced sentence for defendant's status as a fourth habitual offender on June 29, 2010. Defendant does not deny receiving this notice. On July 2, 2010, the prosecution filed a general information, specifically noting that defendant was charged with two counts of CSC I. Defendant was arraigned on July 8, 2010, at which time he acknowledged that he had received the general information and the prosecution's

-11-

notice of intent to seek an enhanced sentence. Defendant contends that the prosecutor did not comply with § 13(1) because it filed the notice of intent *before* arraignment. He asks this Court to read § 13(1) so as to require that the notice must be filed *after* arraignment. He focuses on the phrase "within 21 days *after* the defendant's arraignment" in making his argument. He views the 21-day time period as a window during which the notice must be filed. In other words, according to defendant, notice is only properly filed within the 21-day time period after arraignment or, if arraignment is waived, within 21 days after the filing of the information. The prosecution meanwhile, argues that the 21-day time period is a deadline after which the notice cannot be filed; however, nothing precludes notice from being filed before arraignment.

We decline to adopt defendant's interpretation of the statute. A statute must be construed consistent with its purpose, *Hutcheson*, __ Mich App __, slip op at 2, and here, the purpose of the statute is to provide adequate notice to the defendant. With that in mind, we interpret the 21-day period in § 13(1) as a deadline prohibiting the filing of the notice at any time after the expiration of the 21-day period, rather than a window during which the notice must be filed. The phrases "within 21 days after the defendant's arraignment" and "within 21 days after the filing of the information" do not compel the conclusion that the 21-day time period is a window. Rather, if the purpose of the 21-day period is to provide the defendant with notice, it is entirely reasonable to construe this provision as a deadline after which the prosecutor cannot file the notice. Thus, we find that the statute provides a deadline for filing the notice, not a window within which the notice must be filed. See *Morales*, 240 Mich App at 575 (citation and quotation marks omitted; emphasis added) (explaining that § 13 erects a "bright-line test for determining whether a prosecutor has filed a supplemental information *promptly*."). It would turn the notice requirement on its head were we to decide that notice filed before the arraignment was somehow invalid under the statute. In essence, defendant would have us hold that he had *too much* notice in this case. When the purpose of the statute is to ensure that the defendant has notice, it would be absurd to find the notice in this case was deficient. We will not interpret MCL 769.13(1) in such an absurd manner. See *Hutcheson*, __ Mich App __, slip op at 2.[3]

Our interpretation is buttressed by examining the remainder of the statute. Section 13(2) provides that notice may be served in the same manner as a written pleading, or "may be personally served upon the defendant or his or her attorney at the arraignment on the information charging the underlying offense . . . ." MCL 769.13(2). Service of notice at the arraignment does not occur *after* the arraignment. Were we to adopt defendant's proposed construction, we would be forced to read into the statute a contradiction between the timing requirements in

---

[3] Moreover, even if we agreed with defendant's interpretation, we would still find that he was not entitled to relief. Defendant never disputed that he had notice of the prosecution's intent to seek enhanced sentencing. Even assuming a technical violation of MCL 769.13(1) occurred where defendant was given too much notice, such a technical violation does not entitle defendant to relief, given that there is no question he had ample notice in this case. See *People v Walker*, 234 Mich App 299, 314-315; 593 NW2d 673 (1999) (holding that the failure to file a proof of service with the notice of intent, while erroneous, did not entitle the defendant to relief because it was undisputed that the defendant had appropriate notice).

§ 13(1) and the permissible means of service in § 13(2). We will not interpret the statute in such a manner. See *People v Shakur*, 280 Mich App 203, 209-210; 760 NW2d 272 (2008) (citation and quotation marks omitted) ("If statutes lend themselves to a construction that avoids conflict, that construction should control.").

Affirmed.

/s/ Jane M. Beckering
/s/ Mark J. Cavanagh
/s/ Henry William Saad