# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MARKUS GERALD-ALLEN EVANS,

Defendant-Appellant.

UNPUBLISHED
August 8, 2017

No. 332362
Genesee Circuit Court
LC No. 13-034062-FC

Before: SHAPIRO, P.J., and GLEICHER and O'BRIEN, JJ.

PER CURIAM.

Defendant, Markus Gerald-Allen Evans, was convicted by a jury of two counts of felony murder, MCL 750.316(1)(b), one count of first-degree home invasion, MCL 750.110a(2), one count of felon in possession of a firearm, MCL 750.224f, and one count of possession of a firearm during the commission of a felony, MCL 750.227b, and sentenced as a fourth-offense habitual offender, MCL 769.12, to concurrent prison terms of life for the murder convictions, 10 to 20 years for the home-invasion conviction, and 2 to 5 years for the felon-in-possession conviction, and a consecutive prison term of 2 years for the felony-firearm conviction. We affirm.

Defendant and his co-defendant, Roderick Jackson, were arrested on April 8, 2012, after breaking into a home in Flint, Michigan, and murdering the home's two occupants. After he was arrested, defendant eventually agreed to testify against Jackson, as well as several other individuals, as part of a federal proffer agreement with federal prosecutors who were conducting a racketeering investigation into "the Howard Boys," a gang that defendant was admittedly a member of. In light of his ongoing cooperation in the federal investigation, defendant was also engaging in plea negotiations with the prosecution relating to the charges in this case, which were contingent upon his cooperation in the state investigation as well. As part of his proffer agreement, defendant admitted that he broke into the home at issue on April 8, 2012, admitted that he shot one of the occupants approximately 12 times, and admitted that Jackson broke into the home and shot the other occupant. Pursuant to his proffer agreement, defendant was required to testify truthfully against Jackson, but, during a hearing on October 6, 2015, defendant stated that he would no longer cooperate with the state and federal authorities. As a result, the federal investigation and the proceedings in this matter continued without his cooperation. In the state case, defendant was tried before a jury beginning on February 9, 2016, just four months after he

-1-

refused to cooperate, and a jury found him guilty as charged. He now challenges his convictions and corresponding sentences on constitutional grounds in three different ways.

First, defendant argues that he was deprived of his constitutional right to a speedy trial because the prosecution failed to bring him to trial within 18 months after his arrest. We disagree.

> Whether a defendant was denied his constitutional right to a speedy trial is a mixed question of fact and law. We review trial court factual findings under the clearly erroneous standard. We review constitutional questions of law de novo. To determine whether a defendant has been denied his right to a speedy trial, this Court considers (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) any prejudice to the defendant. A delay of more than eighteen months is presumed to be prejudicial; the prosecution bears the burden of proving lack of prejudice to the defendant. The establishment of presumptively prejudicial delay triggers an inquiry into the other factors to be considered in the balancing of competing interests to determine whether a defendant has been deprived of the right to a speedy trial. [*People v Gilmore*, 222 Mich App 442, 459; 564 NW2d 158 (1997) (internal citations and quotation marks omitted).]

In this case, defendant was arrested on February 8, 2012, and his jury trial did not commence until February 9, 2016, approximately four years later. *People v Williams*, 475 Mich 245, 262; 716 NW2d 208 (2006) (providing that "the length of delay" is measured "between defendant's arrest and the trial"). Because the length of the delay is more than eighteen months, the first factor set forth above favors defendant's position, and prejudice is presumed. *Gilmore*, 222 Mich App at 459.

However, the second factor both favors the prosecution and largely undermines defendant's reliance on the first factor. *People v Waclawski*, 286 Mich App 634, 666; 780 NW2d 321 (2009) ("In assessing the reasons for delay, this Court must examine whether each period of delay is attributable to the defendant or the prosecution."). On appeal, defendant claims that the only "reason for the delays are court unavailability and joining the trial with that of the co-defendant." However, the record belies that assertion. As indicated above, a significant portion of the alleged delay at issue, from February 8, 2012, to October 6, 2015, is attributable to defendant's cooperation in the state and federal investigations, a reason that defendant does not even acknowledge in his argument on appeal. It appears that the only delay somewhat attributable to the prosecution is the time period from when defendant expressed his decision to no longer cooperate, on October 6, 2015, to when defendant's jury trial began, on February 9, 2016. This four-month delay does not weigh heavily against the prosecution in this regard. While defendant is arguably correct in asserting that there were other various delays attributable to "court unavailability and joining the trial with that of the co-defendant" or to otherwise unexplained reasons, those "delays inherent to the court system," while "technically attributable to the prosecution . . . are given a neutral tint and are assigned only minimal weight in determining whether a defendant was denied a speedy trial." *Gilmore*, 222 Mich at 460; see also *Waclawski*, 286 Mich App at 666.

With respect to the third factor, the record does not support defendant's claim that he asserted his constitutional right to a speedy trial on July 14, 2015. Instead, the record supports the prosecution's argument that defendant only, and specifically, sought dismissal pursuant to the 180-day rule, which is not the same grounds as he now asserts. Consequently, this factor weighs against defendant's position. *Williams*, 475 Mich at 263 (holding that "the trial court did not clearly err in weighing this favor heavily against defendant"). Furthermore, we cannot overlook the fact that, even as late as a hearing on July 14, 2015, it appears that the parties recognized that defendant was cooperating with law enforcement pursuant to his proffer agreement. We cannot find any legal authority to support the notion that a defendant may use cooperation with law enforcement in a manner that deprives himself of his constitutional right to a speedy trial, and, as indicated above, defendant does not address his failure to comply with the proffer agreement at all in his argument on appeal.

Finally, with respect to the fourth factor, we agree with the prosecution's argument that there is nothing in the record to support a conclusion that defendant, who was in federal custody throughout the entirety of the alleged delay and largely cooperating with law enforcement, was somehow prejudiced by any delay present in this case. *Williams*, 475 Mich at 264 ("[T]his Court has held that the prejudice prong . . . may properly weigh against a defendant incarcerated for an even longer period if his defense is not prejudiced by the delay."). Furthermore, as the prosecution contends, the fact that defendant admitted his role in the crimes at issue in this case undermines the notion that he was otherwise prevented from preparing a defense.

In sum, defendant's claim that "court unavailability and joining the trial with that of the co-defendant" were the only causes of the delay in this case is not supported by the record. While it is true that the lengthy delay in this case is presumptively prejudicial, it is our conclusion that, in light of defendant's refusal to cooperate after doing so throughout the proceedings up to that point, defendant's failure to specifically raise this argument, and the prosecution's persuasive demonstration that defendant was not prejudiced by the delay, defendant was not deprived of his constitutional right to a speedy trial.

Second, defendant argues that he was deprived of his constitutional right to confront the witnesses against him by the admission of Martez Ayers's testimony. We disagree.

"The Confrontation Clause provides that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . .' " *People v Spangler*, 285 Mich App 136, 142; 774 NW2d 702 (2009), quoting US Const, Am VI. The resolution of defendant's argument on appeal requires that this Court determine whether the statements at issue are testimonial or non-testimonial in nature. This is because "the Confrontation Clause bars out-of-court statements that are testimonial in nature unless the declarant is unavailable to testify but the defendant had a prior opportunity to cross-examine the declarant." *Id*. The Confrontation Clause does not, however, bar out-of-court statements that are non-testimonial in nature. *People v Taylor*, 482 Mich 368, 374; 759 NW2d 361 (2008) ("Because the hearsay statements in this case were nontestimonial, they do not implicate the Confrontation Clause[.]"). And, notably, defendant does not make any hearsay-related argument with respect to the statements at issue. *Id*. (providing that the admission of nontestimonial hearsay is nevertheless "governed solely by MRE 804(b)(3)"). Stated simply, statements "made informally to an acquaintance, not during a police interrogation or other formal proceeding or under

circumstances indicating that their 'primary purpose' was to 'establish or prove past events potentially relevant to later criminal prosecution" are nontestimonial. *Id*. at 378.

In this case, defendant takes issue with Ayers's testimony about comments made by Jackson to Ayers regarding the crimes that took place on April 8, 2012. On appeal, defendant generally argues that "there should be an inherent suspicion" about statements given to fellow inmates. He spends little, if any, time in his brief actually arguing the merits of whether Jackson's comments to Ayers are testimonial or nontestimonial in nature, and we are not required to do so for him. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Payne*, 285 Mich App 181, 195; 774 NW2d 714 (2009) (citation and internal quotation marks omitted). Furthermore, it is quite apparent from the record that Ayers was an acquaintance, and it is equally apparent that Jackson made these statements to Ayers in an informal setting, not in a police interrogation, formal proceeding, or under any other circumstances where the primary purpose was related to subsequent prosecution. *Taylor*, 482 Mich at 378. While Ayers's description of his relationship with Jackson may not have included, verbatim, the word "acquaintance," we nevertheless conclude that the fact that he "somewhat" knew Jackson is sufficient to render the statements non-testimonial in nature. He does not provide, and we are unable to find, any factual support for the notion that Ayers was a confidential informant, which makes this case different from *United States v Cromer*, 389 F3d 662 (CA6 2004), a case relied on by defendant. Accordingly, because the statements at issue were nontestimonial in nature, defendant's confrontation rights were not violated.

Third, defendant argues that he was deprived of his constitutional right to a fair trial by the admission of irrelevant and unfairly prejudicial other-acts evidence. We disagree.

> The decision whether to admit evidence falls within a trial court's discretion and will be reversed only when there is an abuse of discretion. A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. Decisions concerning the admission of evidence often involve preliminary questions of law that are reviewed de novo. These preliminary questions of law include questions involving the interpretation of rules of evidence. A trial court necessarily abuses its discretion when it makes an error of law. [*People v Duncan*, 494 Mich 713, 722-723; 835 NW2d 399 (2013).]

Our Supreme Court has recently summarized the framework for analyzing the admission of other-acts evidence as follows:

> *People v VanderVliet*, 444 Mich 52, 64; 508 NW2d 114 (1993), sets forth the prevailing framework for analyzing admissibility of "[e]vidence of other crimes, wrongs, or acts" under MRE 404(b). As this Court explained then and has consistently reaffirmed since, MRE 404(b) "is a rule of legal relevance" that "limits only one category of logically relevant evidence": "[i]f the proponent's only theory of relevance is that the other act shows defendant's inclination to wrongdoing in general to prove that the defendant committed the conduct in question, the evidence is not admissible." *Id*. at 61-63. " 'Underlying the rule is

the fear that a jury will convict the defendant inferentially on the basis of his bad character rather than because he is guilty beyond a reasonable doubt of the crime charged.' " *People v Watkins*, 450, 468; 818 NW2d 296 (2012), quoting *People v Crawford*, 458 Mich 376, 384; 582 NW2d 785 (1998). MRE 404(b) governs but does not prohibit all evidence of other acts that risks this character-to-conduct inference; the rule "is not exclusionary, but is inclusionary, because it provides a nonexhaustive list of reasons to property admit evidence that may nonetheless also give rise to an inference about the defendant's character." *People v Mardlin*, 487 Mich 609, 616; 790 NW2d 607 (2010); see, e.g., *Watkins*, 491 Mich at 468 ("MRE 404(b) requires the exclusion of other-acts evidence if its only relevance is to show the defendant's character or propensity to commit the charged offense."); *People v Sabin (After Remand)*, 463 Mich 43, 56; 614 NW2d 888 (2000) ("The *VanderVliet* analytical framework reflects the theory of multiple admissibility on which MRE 404(b) is founded."). Accordingly,

> [t]o admit evidence under MRE 404(b), the prosecutor must first establish that the evidence is logically relevant to a material fact in the case, as required by MRE 401 and MRE 402, and is *not* simply evidence of the defendant's character or relevant to his propensity to act in conformance with his character. The prosecution thus bears an initial burden to show that the proffered evidence is relevant to a proper purpose under the nonexclusive list in MRE 404(b)(1) or is otherwise probative of a fact other than the defendant's character or criminal propensity. Evidence relevant to a noncharacter purpose is *admissible* under MRE 404(B) *even if* it also reflects on a defendant's character. Evidence is *inadmissible* under this rule *only* if it is relevant solely to the defendant's character or criminal propensity . . . . Any undue prejudice that arises because the evidence also unavoidably reflects the defendant's character is then considered under the MRE 403 balancing test, which permits the court to exclude relevant evidence if its "probative value is substantially outweighed by the danger of unfair prejudice . . . ." MRE 403. Finally, upon request, the trial court may provide a limiting instruction to the jury under MRE 105 to specify that the jury may consider the evidence only for proper, noncharacter purposes. [*Mardlin*, 487 Mich at 615-616 (footnotes omitted).]

In light of the "inherent complexity" in applying this framework to the various circumstances and scenarios that may arise in a "modern day trial," this Court has adopted a pretrial notice requirement, first set forth in *VanderVliet* and now codified in MRE 404(b)(2), "[t]o assist the trial court in this extraordinarily difficult context and to promote the public interest of reliable fact finding." *VanderVliet*, 444 Mich at 87, 89. Requiring the prosecution to give "pretrial notice of its intent to introduce other acts evidence at trial" is designed to "promote [] reliable decision making," to "prevent[] unfair surprise," and to "offer [] the defense the opportunity to marshal arguments regarding both relevancy and

unfair prejudice." *Id*. at 89 n 51; see *Sabin*, 463 Mich at 60 n 6. The notice must be "reasonable" and provided before trial, but may be provided "during trial if the court excuses pretrial notice on good cause shown." MRE 404(b)(2). And as its plain terms make clear, this notice requirement is coextensive with and reflective of MRE 404(b)'s inclusionary nature, applying to "any [other-acts] evidence" the prosecution in a criminal case "intends to introduce at trial," regardless of whether "the rationale . . . for admitting the evidence" is "mentioned in subparagraph (b)(1)." [*People v Jackson*, 498 Mich 246, 258-261; 869 NW2d 253 (2015).]

In this case, defendant claims that reversal is required because the prosecution presented and the trial court allowed the admission of gang-related testimony. He is partially correct—the prosecution did present and the trial court did allow the admission of this type of testimony. Defendant fails to acknowledge, however, that this testimony was part of evidence presented by the prosecution regarding the federal investigation, and the record reflects that defendant's trial counsel expressly agreed that the admission of that evidence was proper. Consequently, this issue is waived. *People v Szalma*, 487 Mich 708, 726; 790 NW2d 662 (2010) ("[A] party may not harbor error at trial and then use that error as an appellate parachute[.]").

In any event, we discern no error with respect to the trial court's decision to admit evidence regarding the federal investigation, including gang-related testimony. First, contrary to defendant's argument, testimony with respect to his affiliation with "the Howard Boys" was relevant for several reasons. For example, his gang affiliation reflected on Ayers's credibility. It also reflected on defendant's own credibility because it provided context to the proffer agreement discussed above. These are non-character purposes. MRE 404(b). Without establishing defendant's relationship to Jackson and Ayers, as well as other individuals at issue in this case, it is difficult to ascertain why defendant was cooperating with federal investigators as described above. Consequently, we conclude that this testimony had a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401.

Second, contrary to defendant's argument, testimony with respect to his affiliation with "the Howard Boys" was not unfairly prejudicial. Defendant vaguely points to testimony regarding the number of homicides associated with this gang, but he overlooks his trial counsel's questioning in this regard, which took place before the prosecutor's questioning at issue. Trial counsel asked a variety of questions in an effort to point out that defendant was implicated in only one of many homicides in the area. While this testimony was, obviously, prejudicial to an extent, we cannot agree that it was unfairly prejudicial. MRE 403 requires that the probative value of the evidence at issue be *substantially outweighed* by the danger of unfair prejudice, and, in our view, it was not in this case.

Defendant also seems to take issue with the prosecution's failure to provide pretrial notice as required by MRE 404(b). However, the prosecution's failure in this regard is likely attributable to its *agreement* with defendant's trial counsel with respect to evidence of the federal investigation. In any event, the prosecution's failure in this regard was not outcome determinative for the reasons described below. *Jackson*, 498 Mich 270, quoting *People v Douglas*, 496 Mich 557, 566; 852 NW2d 587 (2014) ("And while it was error for the prosecution not to provide, and the trial court not to require, 'reasonable notice' of [the other-acts evidence]

-6-

under MRE 404b(2), the defendant has not demonstrated that this error 'more probably than not . . . was outcome determinative.' "). Furthermore, nothing in the record could support a conclusion that defendant was somehow surprised by the testimony in this regard.

Finally, assuming error, reversal is not required because any error in this regard was harmless. As stated above, defendant admitted his involvement in the crimes at issue. His admission was strongly corroborated by other witnesses and other evidence. Any mention of defendant's gang affiliation, when compared to the substantial amount of evidence against defendant, was simply not outcome determinative. Reversal is therefore not required.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Elizabeth L. Gleicher
/s/ Colleen A. O'Brien