*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

ABDULMASIH SABRI NEHMOU,

Defendant-Appellee.

UNPUBLISHED
November 21, 2023

No. 360209
Macomb Circuit Court
LC No. 2021-001365-FC

Before: BOONSTRA, P.J., and LETICA and FEENEY, JJ.

PER CURIAM.

The prosecution appeals as of right from the trial court's order dismissing one count of first-degree criminal sexual conduct (CSC), MCL 750.520b(1)(c), and one count of first-degree home invasion, MCL 750.110a(2), against defendant. Specifically, the prosecutor only submits that the trial court erred in its ruling excluding evidence. We reverse the trial court's underlying evidentiary ruling.[1]

## I. BASIC FACTS AND PROCEDURAL HISTORY

On January 5, 2021, defendant was allegedly recorded on a video camera entering the home of the female complainant, RM, at 12:40 p.m. After defendant's entry into the home, the sound of a woman's scream was heard. At 2:18 p.m., RM called 911 and reported that a man attempted to rape her and that she had a video camera recording. When a patrol officer arrived at the residence, he observed RM and her husband sitting on the couch. RM appeared "shaken up" as if she had previously been crying. After RM was separated from her husband, she told the patrol officer that "an unknown male went over to her, put his hand over her mouth, told her to be quiet, and

---

[1] On appeal, the prosecutor's statement of questions presented raises only one issue addressing the trial court's evidentiary decision. An issue not raised in the statement of questions presented is not properly presented for appellate review and is considered waived. *People v Fonville*, 291 Mich App 363, 383; 804 NW2d 878 (2011); MCR 7.212(C)(5). Because the prosecutor's appeal does not raise or even address the trial court's rationale for the dismissal, we do not address it.

penetrated her vagina with his fingers." In light of the nature of the assault, the officer asked RM if she wished to meet with a Sexual Assault Nurse Examiner (SANE), but RM appeared hesitant, did not immediately agree, and explained that she had already showered and changed her clothing. The officer contacted Warren Police Detective James Twardesky who instructed the officer to transport RM to the police station.

Detective Twardesky spoke with RM at the police station. RM reported that an unknown male forced his way into her home, slammed her into a closet door, placed his hand over her mouth, and digitally penetrated her. After speaking with RM for 15 to 20 minutes, Detective Twardesky explained the nature of a SANE and the purpose of a SANE examination. RM agreed to visit the SANE. A patrol officer transported RM to Turning Point USA, an organization which provides forensic examination services for CSC victims. Upon arrival, an advocate escorted RM into the building. The transporting officer returned to the police station, leaving a card with RM in the event that she needed additional transportation.

At approximately 6:30 p.m., SANE Christina Boyland conducted a forensic examination of RM. SANE Boyland testified that while she initially communicated with the police concerning RM's examination referral, she subsequently spoke with RM over the phone. SANE Boyland explained the nature of the SANE examination and obtained preliminary consent for RM to visit the SANE facility. Upon RM's arrival, SANE Boyland collected general medical history from RM, conducted a head-to-toe physical assessment for potential injuries, performed a detailed genital exam, and swabbed RM for potential DNA samples. After SANE Boyland obtained the necessary specimens, she compiled a sexual assault evidence collection kit and eventually provided the contents to the police, with RM's consent. SANE Boyland subsequently authored a 10-page medical record or SANE report, which detailed her observations of RM and the results of the examination.

During the pendency of the case, it was learned that RM knew defendant before the alleged crimes occurred, although she denied a dating relationship with him. Additionally, an attorney, acting on behalf of RM, sent correspondence to the prosecutor indicating that RM would invoke her Fifth Amendment privilege against self-incrimination if called to testify. As the case proceeded through district and circuit court, the parties disputed the admissibility of any testimony pertaining to statements made by RM and the 10-page report of SANE Boyland under *Crawford v Washington*, 541 US 36; 124 S Ct 1354; 158 L Ed 2d 177 (2004), if RM failed to appear at trial. The prosecutor represented that RM was fearful after having been contacted by defendant's family members. The prosecutor also posited that RM was entitled to immunity or did not need immunity. Yet, the specific efforts taken to contact RM and any confirmation regarding whether RM recanted her allegations were not delineated on the record.

The trial court conducted an evidentiary hearing to determine the admissibility of RM's statements to SANE Boyland. Specifically, it examined the totality of the circumstances surrounding RM's statements to determine if they were testimonial. The trial court acknowledged that RM seemingly made statements to SANE Boyland for purposes of medical treatment and diagnosis, but noted there was a concomitant motivation by SANE Boyland to collect evidence. Ultimately, after discussing the circumstances surrounding the statements, the trial court concluded the primary purpose of the SANE examination "was to establish past events potentially relevant to a later prosecution rather than to provide medical assistance[.]" Accordingly, the trial court

determined that the statements were testimonial in nature. Therefore, RM's statements to SANE Boyland were not admissible unless RM testified, thereby obviating any confrontation issue.

After the decision, the prosecutor represented that she would address the evidentiary ruling with the appellate division to determine whether an interlocutory appeal would be taken. The trial court noted that the trial date was scheduled to occur in four days, RM should be subpoenaed, and the court would address any invocation of a privilege. After the trial court's statement, the prosecutor responded, "Of course, I subpoenaed her[;] there is a trial scheduled for Tuesday."

On the scheduled trial date, the prosecution appeared without RM although RM was identified on her witness list. It was represented that the police attempted to serve RM at her home but were unsuccessful. Additionally, the prosecutor e-mailed a subpoena to RM's attorney. RM's attorney had not spoken to RM. The prosecutor expressed that RM was in hiding because of her fear of defendant. The prosecutor requested a brief adjournment to try to locate RM or to determine a manner to proceed to trial without RM and SANE Boyland. Despite the earlier representation that RM had been subpoenaed, it was explained that the prosecution did not generally subpoena witnesses until trial commenced. The defense objected to any adjournment, citing defendant's period of incarceration, the prosecutor's lack of effort to secure RM's testimony, and the failure to appropriately subpoena RM. The defense questioned why an adjournment or stay was warranted when the prosecutor could dismiss and re-file charges. The prosecutor never indicated that she was prepared to proceed to trial with the home invasion offense alone. Instead, the prosecutor explained that she had researched the issue and believed that RM did not need immunity to testify. Further, she noted that the proceedings were delayed by the defense challenge to the admission of evidence. The prosecutor stated that the trial court "eviscerated" her case by excluding the testimony of SANE Boyland, and she could not proceed.

The trial court noted that it questioned the admissibility of SANE Boyland's testimony months earlier and directed the parties to brief the issue. It determined that, despite identifying RM on its witness list, there was little effort by the prosecution to secure her presence. The trial court concluded that the prosecutor should have prepared for the contingency of witness availability for over a year, but did not do so. The trial court dismissed the case without prejudice, noting the prosecution's representation that RM was in hiding for fear of defendant. From this dismissal, the prosecutor appeals.

## II. STANDARD OF REVIEW

"A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion." *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013). A court abuses its discretion when its decision is "outside the range of principled outcomes." *People v Musser*, 494 Mich 337, 348; 835 NW2d 319 (2013). "Preliminary issues of law, including the interpretation of the rules of evidence and the effect of constitutional provisions, are reviewed de novo." *People v Benton*, 294 Mich App 191, 195; 817 NW2d 599 (2011). The constitutional question of whether defendant was denied his constitutional right to confront the witnesses against him is reviewed de novo. *Benton*, 294 Mich App at 195.

"A trial court's decision on a motion to dismiss charges is also reviewed for an abuse of discretion." *People v Meeker*, 340 Mich App 559, 563; 986 NW2d 622 (2022). A trial court's

factual findings, following an evidentiary hearing, are reviewed for clear error. See *People v Hartwick*, 498 Mich 192, 239; 870 NW2d (2015); *People v Thorne*, 322 Mich App 340, 347; 912 NW2d 560 (2017). Factual findings will be affirmed on appeal unless this Court is left with a definite and firm conviction that a mistake was made. *People v Wheeler*, 336 Mich App 361, 365; 970 NW2d 438 (2021). The trial court's application of the facts to the relevant law is reviewed de novo. *People v Roscoe*, 303 Mich App 633, 647; 846 NW2d 402 (2014).

## III. ANALYSIS

The prosecutor submits the trial court erred when it determined that the statements of RM to SANE Boyland were testimonial in nature. We agree.

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" US Const, Am VI; see also Const 1963, art 1, § 20. "The Confrontation Clause of the Sixth Amendment bars the admission of testimonial hearsay unless the declarant is unavailable and the defendant has had a prior opportunity for cross-examination." *People v Payne*, 285 Mich App 181, 197; 774 NW2d 714 (2009). "However, if the hearsay is nontestimonial, the Confrontation Clause does not restrict state law from determining admissibility." *People v Garland*, 286 Mich App 1, 10; 777 NW2d 732 (2009).

Evidence is testimonial if it is "a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *People v Bruner*, 501 Mich 220, 227; 912 NW2d 514 (2018) (quotation marks and citation omitted). Statements are also testimonial if "the 'primary purpose' of the statements or the questioning that elicits them 'is to establish or prove past events potentially relevant to later criminal prosecution.' " *Garland*, 286 Mich App at 10, quoting *Davis v Washington*, 547 US 813, 822; 126 S Ct 2266; 165 L Ed 2d 224 (2006).

In *People v Spangler*, 285 Mich App 136, 138; 774 NW2d 702 (2009), this Court addressed the admissibility of a statement made by the four-year-old complainant to a SANE. Specifically, the complainant's mother became concerned when the young complainant engaged in behaviors atypical for his age. The complainant's mother contacted the family physician who referred her to the hospital to check for injuries. At the hospital, the complainant's mother signed a permission form authorizing a SANE forensic examination, including photographs. A SANE recorded that the complainant divulged that the defendant committed acts of CSC. However, the record contained no information regarding the intake process, the SANE assignment, the hospital's association with SANE, the training and certification of a SANE, and the relationship between a SANE and law enforcement. Additionally, the circumstances surrounding the completion of the statement form and the context of the complainant's statement were not delineated. The defendant challenged the admission of the complainant's statement to the SANE, and the trial court granted the motion in limine. However, the record available to the trial court was limited to oral argument on the motion in limine to exclude the statement, the state police incident report, and a medical forensic form. *Id*. at 138-140.

The *Spangler* Court determined that the underlying circumstances pertaining to a SANE

examination must be evaluated, stating:

> [I]n order to determine whether a sexual abuse victim's statements to a SANE are testimonial, the reviewing court must consider the totality of the circumstances of the victim's statements and decide whether the circumstances objectively indicated that the statements would be available for use in a later prosecution or that the primary purpose of the SANE's questioning was to establish past events potentially relevant to a later prosecution rather than to meet an ongoing emergency.

The *Spangler* Court then identified a nonexhaustive list of factors to be considered in evaluating whether the statements of a victim of CSC to a SANE or similar examiner were testimonial:

> . . . (1) the reason for the victim's presentation to the SANE, e.g., to be checked for injuries or for signs of abuse; (2) the length of time between the abuse and the presentation; (3) what, if any, preliminary questions were asked of the victim or the victim's representative, or what preliminary conversations took place, before the official interview or examination; (4) where the interview or examination took place, e.g., a hospital emergency room, another location in the hospital, or an off-site location; (5) the manner in which the interview or examination was conducted; (6) whether the SANE conducted a medical examination and, if so, the extent of the examination and whether the SANE provided or recommended any medical treatment; (7) whether the SANE took photographs or collected any other evidence; (8) whether the victim's statements were offered spontaneously, or in response to particular questions, and at what point during the interview or examination the statements were made; (9) whether the SANE completed a forensic form during or after the interview or examination; (10) whether the victim or the victim's representative signed release or authorization forms, or was privy to any portion of the forensic form, before or during the interview or examination; (11) whether individuals other than the victim and the SANE were involved in the interview or examination and, if so, the level of their involvement; (12) if and when law enforcement became involved in the case, how they became involved, and the level of their involvement; and (13) how SANEs are used by the particular hospital or facility where the interview or examination took place. [*Id*. at 155-156.]

In *Spangler*, this Court concluded that the trial court erred by solely rendering its admissibility determination premised on the basis of the forensic form completed by the SANE. The trial court record was insufficiently developed, and the totality of the circumstances was and could not be addressed, warranting a remand for further proceedings. *Id*. at 156-157.

In *Garland*, the victim went to a bar with her sister, her friend Barb, and the defendant. *Garland*, 286 Mich App at 3. The victim and her sister left the bar separately and accidentally took Barb's keys. Barb's keys were left on their porch. The defendant drove Barb to the apartment to retrieve the keys and then left Barb at her car. The victim was asleep when she woke up to find the defendant sexually assaulting her. The victim denied consenting to any sexual activity or to inviting the defendant to her apartment. *Id*. at 3-4.

On appeal, the defendant alleged that the trial court erred by admitting the statements by the victim to a nurse, contending that the statements were hearsay and violated his right of confrontation. This Court determined that the victim's statements to the nurse were admissible as an exception to the hearsay rule governing statements for medical treatment, stating:

> "Statements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment" are admissible as an exception to the hearsay rule. MRE 803(4); *People v Meeboer (After Remand)*, 439 Mich 310, 322; 484 NW2d 621 (1992). The rationale supporting the admission of statements under this exception is the existence of (1) the reasonable necessity of the statement to the diagnosis and treatment of the patient, and (2) the declarant's self-interested motivation to speak the truth to treating physicians in order to receive proper medical care. *Id.*
>
> The victim's statements to the nurse were reasonably necessary for her treatment and diagnosis. The victim went to the hospital for medical care the morning of the assault. She was directed to LACASA, a nonprofit organization in Livingston County that provides free and confidential comprehensive services for sexual assault survivors, for such medical care. The nurse was the first person to take a history from the victim and examine the victim, which she did at 6:00 p.m. on the day of the assault. The police investigation occurred after, and separate from, the nurse's taking of the history and examination. The nurse testified that the patient's history is very important because it tells her how to treat the patient and how to proceed with the examination. Then, considering the victim's history, the nurse provides medical treatment to the victim.
>
> Moreover, the victim had a self-interested motivation to speak the truth to the nurse in order to obtain medical treatment. The victim in this case was over the age of ten and thus there was a rebuttable presumption that she understood the need to tell the truth to the nurse. *People v Crump*, 216 Mich App 210, 212; 549 NW2d 36 (1996); *People v Van Tassel (On Remand)*, 197 Mich App 653, 662; 496 NW2d 388 (1992). The fact that the victim did not have any immediately apparent physical injuries did not rebut this presumption. Often, the injuries inflicted on the victim in a sexual assault, such as transmission of a sexually transmitted disease, immune deficiency virus, or psychological trauma, are impossible to detect at first but still require diagnosis and treatment. *Meeboer, supra* at 328-329. [*Garland*, 286 Mich App at 8-10.]

This Court also addressed the defendant's challenge to the right to confront the witnesses against him. After citing to the factors delineated in *Spangler*, the *Garland* Court determined that the statements to the nurse were admissible, holding:

> The admission of the victim's statements to the nurse did not violate [the]

defendant's right to confront the witnesses against him because the statements were nontestimonial.

*　*　*

Here, unlike in *Spangler*, where the factual record was not developed enough to determine whether the victim's statements were testimonial, we have a factual record that sufficiently indicates that under the totality of the circumstances of the complainant's statements, an objective witness would reasonably believe that the statements made to the nurse objectively indicated that the primary purpose of the questions or the examination was to meet an ongoing emergency. *Id.* at 157.

For the same reasons that the victim's statements to the nurse were reasonably necessary for her treatment and diagnosis, we conclude that the victim's statements were nontestimonial. Although the nurse does collect evidence during the course of the examination after taking a patient's history and the nurse is required to report the assault and turn over the evidence to law enforcement officials, the nurse is not involved in the police officer's interview of the victim after the examination and is not personally involved in the officer's investigation of the crime. The victim in this case did not have any outwardly visible signs of physical trauma; therefore, the nurse could not have treated her with antibiotics and emergency birth control unless she knew her history. Thus, we hold that, on these facts, the circumstances did not reasonably indicate to the victim that her statements to the nurse would later be used in a prosecutorial manner against defendant. *People v Jambor (On Remand)*, 273 Mich App 477, 487; 729 NW2d 569 (2007).

[T]he Confrontation Clause did not bar admission of the victim's statements to the nurse[.] [*Garland*, 286 Mich App at 10-12.]

In this case, the trial court applied the witnesses' testimony to the *Spangler* factors and determined that the SANE "examination was to establish past events potentially relevant to a later prosecution rather than to provide medical assistance or assistance otherwise." However, following a de novo application of the facts to the applicable law, we conclude that the trial court erred in its determination. The SANE examination was performed in an office located in a hospital's medical office building. The space consisted of a waiting area, a location where the client's medical history was taken, a laboratory where medication was kept, and a physical examination room. The examination room had all of the necessary equipment to perform a gynecological evaluation and take necessary samples. SANE Boyland testified that the primary purpose of the examination was to address the health and well-being of the patient. The meeting with the patient was designed to take a history, diagnose, and formulate a treatment plan.

SANE Boyland testified that if a patient was referred for an examination, she called the person who made the referral. In this case, Detective Twardesky spoke with RM at the police station and explained the nature of a SANE and the purpose of a SANE examination. SANE Boyland, however, then spoke directly to the patient, in this case RM, to ensure that the examination was requested. SANE Boyland described the circumstances surrounding an examination. She initially discussed the services to be provided, and the patient was advised of

what the exam entailed. The patient was given the opportunity to ask any questions and initially provided telephonic consent. Once the patient arrived at the office, the patient was interviewed by an advocate[2] to determine immediate needs and any crisis intervention. SANE Boyland then discussed the medical examination, its components, the care provided, and answered any questions. After the patient signed an informed consent form, the patient was advised that participation in the criminal justice system was not required to receive medical treatment. Once the examination started, the patient retained the right to stop it at any time. The patient was told that the examination, the treatment, and any evidence collection was voluntary. The patient was given important health information and advised that all services were performed for free.

SANE Boyland then testified regarding her examination of RM. After RM was advised that she was not obligated to participate in any police investigation, she opted to submit to the physical examination. After obtaining a medical history, SANE Boyland questioned RM regarding her injuries. The SANE examiner then performed a general physical exam followed by a head-to-toe evaluation documenting injuries through photographs or charting. SANE Boyland testified that no one else was present for the exam and interview, and the police were not involved, in any way, with the examination. SANE Boyland examined RM within six hours of the reported assault and performed an external physical exam of her genitals. Although RM declined a speculum exam, SANE Boyland was able to take blind samples.

Thus, within six hours of the alleged assault, RM arrived at a medical office building for purposes of a medical examination to check for injuries or signs of abuse. The examination took place in an office located in a hospital's medical office building. An interview and examination was conducted by SANE Boyland. Although photographs and evidence were collected, RM was advised that she was not required to participate in the criminal justice process. Despite the recommendation by the police to participate in the SANE, SANE Boyland testified that she independently advised RM of the process and obtained her consent when the police were not present. In light of the totality of these facts and circumstances, an objective witness would reasonably believe that any statements were not made for the primary purpose of establishing past events potentially relevant to a later prosecution instead of the necessity of addressing an ongoing emergency. *Spangler*, 286 Mich App at 31. Because the statements were nontestimonial, they were not barred by the Confrontation Clause.

In *Garland*, the victim sought treatment before being interviewed by the police. We recognize that RM expressed hesitancy to consult with a SANE examiner and was driven to the office building by the police. However, the police explained to RM the purpose of the examination as well as the treatment she would receive. Further, after arriving at the SANE office and after the police departed, SANE Boyland once again obtained RM's consent to submit to the exam. SANE Boyland advised RM that she was not required to cooperate with law enforcement by submitting to the exam and obtaining medical treatment. We conclude that the police involvement at the beginning of the investigation did not alter the purpose and scope of the examination. Although defendant asserts that the police "cajoled" RM into participating in a SANE examination, the trial court did not make a finding. Rather, Detective Twardesky expressed that a victim should be

---

[2] An advocate did not testify at the evidentiary hearing.

examined for injuries and disease transmission.  Accordingly, the trial court erred in determining that the evidence was testimonial and deemed the SANE examiner's testimony inadmissible.

We reverse the trial court's evidentiary ruling.


/s/ Mark T. Boonstra
/s/ Anica Letica
/s/ Kathleen A. Feeney